McGREGOR W. SCOTT
United States Attorney
CHRISTINA M. McCALL
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRYAN PAUL TAMBLYN,<br><br>Defendant. | Case No. 2:20-CR-0014-KJM<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**<br><br>Date: February 24, 2020<br>Judge: Hon. Kimberly J. Mueller |

**I.    INTRODUCTION**

The United States of America (government) opposes defendant Bryan Tamblyn's motion, under 18 U.S.C. § 3145(b) (Dkt. #15) to revoke the order for the defendant's detention entered by U.S. Magistrate Judge Kendall J. Newman on February 4, 2020.  Magistrate Judge Newman ordered the defendant detained, as a danger to the community, after a hearing at which he concluded that there were no conditions that could reasonably ensure the safety of persons and the community.  The United States Pretrial Services Office ("Pretrial Services") conducted an extensive bail study, evaluated the large number of sureties and custodians that the defendant's family offered, and concluded that no combination of circumstances could be imposed that would ensure the safety of the community.  The defendant failed to rebut the presumption that he is a danger to the community, in light of his 2009 arrest for forcible rape and subsequent plea to assault, and the nature and circumstances of the instant alleged offense, and should remain detained pending trial in this case.

## II. PROCEDURAL BACKGROUND

The federal grand jury returned a one-count Indictment against the defendant on January 16, 2020. The Indictment alleges a violation of 18 U.S.C. § 2252(a)(2) for knowing receipt of visual depictions of minors engaged in sexually explicit conduct between July of 2018 and August of 2019. Dkt. #1.

The defendant was arrested on January 21, 2020 (Dkt. #8) and first appeared in federal court on that date for arraignment (Dkt. #4). At the initial appearance, the government moved for detention and the defendant submitted on the matter of detention without prejudice. *Id*. Pretrial Services prepared a report recommending detention, based upon the nature of the crime and the nature of the defendant's prior conviction, but noted that the defendant had not been interviewed, so limited information was available. Magistrate Carolyn K. Delaney ordered the defendant detained on the basis that the defendant had not introduced sufficient evidence to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3). Dkt. #7.

On January 30, 2020, the defendant filed a motion for bail review, based upon new information, namely multiple proposed sureties and a proposed residence for the defendant, as well as information regarding the availability of financial resources for a bond. Dkt. #9. On the day of the bond hearing, February 4, Pretrial Services prepared an amended report evaluating the potential sureties, and concluding that risk of non-appearance could be mitigated by conditions of release, but the risk of danger posed by the defendant could not be mitigated, so the report recommended detention. Attached to Pretrial Services' amended bail study report was a redacted 71-page compilation of reports[1] relating to the defendant's 2009 arrest for crimes such as rape, sodomy, and penetration of the victim's genital and anal openings ("Addendum to Amended Bail Study").

A transcript of the hearing on the defendant's motion for bail review is marked as Exhibit 1. Magistrate Judge Newman began the hearing by stating that he had reviewed the 71-page

---

[1] The 71 pages of reports relating to the 2009 rape arrest were provided in discovery to defense counsel on 2/11/2020, pursuant to the stipulation regarding protected discovery in the case, and will be provided to the Court by Pretrial Services, along with the amended bail study report.

report (Addendum to Amended Bail Study). Exhibit 1 at 3. The Magistrate Judge also indicated that he did not need counsel for the defendant to address flight risk, but did need her to address danger. *Id.* Counsel for the defendant stated that five members of the defendant's family were present (*Id.* at 4), emphasized that the defendant has lived in Sacramento his whole life, has no prior convictions other than the one arising out of the 2009 rape arrest, had an employment history, was willing to participate in location monitoring and could live in a residence without access to the internet. *Id.* at 4-5. Government counsel summarized the evidence pertaining to the instant offense and agreed with Pretrial Services' recommendation of detention on the basis of danger to the community, not risk of flight. *Id.* at 7-9.

Magistrate Judge Newman ruled that, on the strength of the evidence in this case, plus the defendant's criminal history (namely the 2009 case), the defendant would "be detained as a danger to the community. There is no condition or combination of conditions that would reasonably assure the safety of the community. I'm not going to have him out of custody during the pendency of this case." Exhibit 1 at 10. Magistrate Judge Newman then allowed counsel for the defendant to make additional arguments for release. *Id.* at 10-13. While appreciating the "articulate argument" counsel for the defendant made on his behalf, the Magistrate Judge found that "given his criminal history and the presumptions in these cases and the evidence he's staying in custody." *Id.* at 14. On February 11, 2020, the defendant filed a motion to revoke the order of detention. Dkt. #15.

### III.  FACTUAL BACKGROUND

**2009 Criminal Case**

In 2009, the Sacramento County District Attorney charged the defendant with felony violations of the following sections of the California Penal Code: Section 289(a)(1), unlawfully causing the penetration of the genital opening; Section 289(a)(1), unlawfully causing the penetration of the anal opening; Section 288a(c)(2), unlawfully participating in an act of oral copulation with victim, by force, violence, duress, menace, and fear of immediate and unlawful bodily injury; Section 261(a)(2), unlawfully accomplishing an act of sexual intercourse with a person, against said person's will, by means of force, violence, duress, menace and fear of

immediate and unlawful bodily injury on said person; and Section 286(c)(2), unlawfully participating in an act of sodomy by force, violence, duress, menace and fear of immediate and unlawful bodily injury. Exhibit 2, a printout from the Sacramento Superior Court Public Case Access System for case number 09F04255. The Case Information from the defendant's 2009 criminal case in Sacramento Superior Court shows that the defendant's motion for release on his own recognizance was denied on August 6, 2009. *Id*. at 3.

In the defendant's 2009 rape case, the victim was 19 years old, five feet, five inches tall, and weighed 110 pounds. Addendum to Amended Bail Study at 21. In 2009, Tamblyn was 25 years old, six feet, one inches tall, and weighed 250 pounds. *Id*. Evidence showed that Tamblyn forcibly raped the victim in his bedroom, and, in the process, restrained her by the wrists (causing large visible bruises). A physical examination at the hospital revealed a bite mark on the victim's left shoulder, bruises on both wrists, a suction injury to her left breast, a scratch on her abdomen, and assault-related findings in her genital area. *Id*. at 6, 8, 10. On November 19, 2009, following a no contest plea to Penal Code 245(A)(1) (assault with a deadly weapon, not a firearm), the defendant was sentenced to five years of formal probation, with credit for 330 days served in jail. Exhibit 2 at 3-4.

**Criminal Conduct in 2019**

Between April 1 and 3, 2019, a detective with the Sacramento Valley Internet Crimes Against Children (ICAC) task force discovered that a particular internet Protocol ("IP") address (which was eventually traced to the defendant's home) was actively sharing files depicting the sexual abuse of children through the BitTorrent application. The detective downloaded ten files showing the sexual abuse of children through the IP address at the defendant's residence. The report detailing the undercover downloads from the IP address used by the defendant was previously produced to defense counsel in discovery at TAMBLYN-000639 to 641.

On August 21, 2019, ICAC task force members executed a search warrant at the defendant's home. Although the defendant was not home at the time the warrant was executed[2],

---

[2] The defendant's mother, step-father, siblings and some minor children were at the residence when the ICAC team executed the search warrant.

ICAC members discovered files depicting the sexual abuse of children and children engaged in lascivious displays of genitals, on an external hard drive in the defendant's bedroom. They also discovered the particular BitTorrent program that the undercover detective's investigation revealed the suspect was using on April 1 through 3 when his account was making available child sexual abuse material for download installed on the defendant's desktop computer. Further forensic analysis revealed that the defendant had over 6,000 files containing visual depictions of children engaging in sexually explicit conduct, including pre-pubescent minors and sadistic conduct, on multiple digital drives. Exhibit 1 at 7-9. Forensic evidence revealed that the defendant had been downloading and actively accessing the child sexual abuse material. *Id*.

## IV.   LEGAL PRINCIPLES

Under the Bail Reform Act of 1984, if a district judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The United States Court of Appeals for the Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

Subsection 3142(g) of Title 18 of the United States Code lists the factors that a court shall consider when determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). Those factors are:

   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance . . . ;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including —

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009 (codified at 18 U.S.C. § 2251), Congress stressed that the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. at 3009-27.

Under 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § 2252(a)(2). Notably, the presumption is not that just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive ones, that will reasonably assure the safety of any person and the community as well as the defendant's assurance at future court appearances. In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008), the Ninth Circuit confirmed that this presumption shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. § 3142(f)(2)(B). Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, the Court noted that if a defendant proffers evidence to rebut the presumption of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate. These factors are: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the person; 3) the history and characteristics of the

Government's Opposition to
Defendant's Motion to Revoke Deten.

6

person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g). The "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." *Id.,* citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

V. **THE DEFENDANT SHOULD REMAIN DETAINED**

When this court places the facts of this case into the relevant legal framework, it is apparent that the defendant poses a significant danger to the safety of other persons that cannot be mitigated by conditions of release.   The government agrees with the assessment of the Magistrate Judges and the Pretrial Services report and respectfully submits that the defendant has not rebutted the presumption that there is no combination of conditions that can be fashioned to assure the safety of the community.

**The First 3142(g) Factor Weighs Heavily in Favor of Detention**

In this case, the "nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim" weigh heavily in favor of detention. The defendant is charged with a crime that Congress has declared a crime of violence.  18 U.S.C. § 3156(a)(4)(C).  The charged crime, knowing receipt of child pornography, also involves many minor victims, with 11 series of previously-identified child sexual abuse victims, who were located around the world.  Exhibit 1 at 9.  Few crimes are more serious and have more dramatic and long-lasting impacts on victims than those involving the sexual exploitation of children, as many victims and their family members attest through Victim Impact Statements submitted in cases like this one.  Here, the defendant stands accused of possessing over 6,000 files meeting the definition of children engaged in sexually explicit conduct set forth in 18 U.S.C. § 2256. Investigators found those files on multiple digital drives belonging to the defendant, and forensic evidence indicates the files were downloaded over a period of more than one year.  The

defendant's BitTorrent account was set up to share disturbing videos of child sexual exploitation, which is how the undercover detective originally discovered this defendant's recent criminal activity. This evidence establishes that the defendant was more than a casual participant in the world of visual depictions of child sexual exploitation.

"Consideration of the nature of the offenses charged involves consideration of the penalties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). For the charge in the Indictment, the term of imprisonment ranges from five to 20 years. The United States Sentencing Guidelines' suggested imprisonment range is well above the mandatory minimum sentence, and upon release, the defendant faces a possible lifetime term of supervised release and registration as a sex offender.

Although there are no allegations that the defendant engaged in illicit physical contact with a minor, or that he directly solicited a minor for illicit conduct, that fact does not preclude detention. *See United States v. Schenberger*, 498 F.Supp.2d 738, 743 (D.N.J. 2007). *See also United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006) ("The Indictment contains extremely serious charges that bear directly on the issue of danger. Specifically, the Indictment charges ten counts of possession of child pornography arising from the possession of more than 500 still images and 60 videos of young child engaged in sexually explicit conduct . . . .").

**The Second 3142(g) Factor Weighs Heavily in Favor of Detention**

The "weight of the evidence against the person" also weighs in favor of detention, although this is the least important factor for detention. *Motamedi*, 767 F.2d at 1408. Government counsel summarized some of the weight of the evidence against the defendant at the detention hearing (Exhibit 1 at 8-9) and counsel for the defendant acknowledged that the weight of the forensic evidence in cases of this nature in this district is typically strong (*Id*. at 9).

**The Third 3142(g) Factor is Inconclusive**

The "history and characteristics of the person" factor is inconclusive in this case. The characteristics in the defendant's favor (family ties, length of residence, employment history, and physical /mental condition) address the likelihood of his appearance at future court hearings, while the negative characteristics (past conduct, criminal history, character) address the danger he

poses if released.  The defendant has strong family ties, as evidenced by the Pretrial Service's amended bail study, and the number of family members who attended his detention hearing and offered to be sureties in this case.  The defendant has lived in this community for his entire life, does not have significant mental health issues, and has had employment in this community, as set forth in the Pretrial Services study.  Those characteristics, combined by a bond secured by a family member's home, make it likely that the defendant would appear at future court hearings.  But the defendant's character, past conduct and criminal history, reflected in the 2009 arrest and conviction for a violent crime and the nature of the alleged instant offense, shows an unacceptably high risk to the safety of any other person and the community that cannot be mitigated by the conditions the defendant suggests.  Finally, the defendant's record concerning appearance at prior court proceedings is not applicable because he was detained during his 2009 case.

Even if the court were to treat as evidence the proposal to have the defendant's uncle be a third-party custodian, this proposal would fall short of rebutting the presumption that no combination of conditions will reasonably assure the safety of the community.  The defendant's uncle cannot watch him 24 hours each day, and cannot police the use of secret electronic devices capable of accessing the internet.  Notably, in the 2009 criminal case, the defendant was living with one of his uncles who was allegedly in the residence at the time the victim was screaming during the sexual assault perpetrated by the defendant.  The defendant proposes additional sureties who are family members, but when the defendant committed the alleged instant offense of knowingly receiving child sexual abuse material over a significant period of time, he was living with his mother and certain siblings, and there were children living in the house.  Those family members living in the same residence did not realize that the defendant was continually downloading child sexual abuse material and making it available for others, and their physical proximity did not deter the defendant from that criminal conduct.  The nature and circumstances of the defendant's crimes and his ability to have kept them secret from those who purport to be closest to him underscore the very difficulty of ensuring that the defendant will not commit similar crimes while out of custody.

Government's Opposition to
Defendant's Motion to Revoke Deten.

9

**The Fourth 3142(g) Factor Favors Detention**

The fourth factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release" favors detention.  The two offenses with which the defendant has been charged are both categorized as crimes of violence.  Assault with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury under Calif. Penal Code § 245(a)(1), as it was written prior to its amendment in 2011, categorically qualifies as a conviction for a "crime of violence" within the meaning of 18 U.S.C. § 16(a).  *United States v. Vasquez-Gonzalez*, 901 F.3d 1060 (9th Cir. 2018).  The instant offense, for purposes of the Bail Reform Act, has been defined by Congress as a crime of violence.  18 U.S.C. 3156(a)(4)(C) (referring to any felony under chapter 110).  As shown in the 71-page collection of documents from the 2009 criminal case (in the Addendum to Amended Bail Study), the nature of the defendant's prior criminal conduct was violent and caused physical and emotional harm to the 19-year-old victim.

Forensic evidence on the defendant's devices indicates that he was downloading child sexual abuse material through BitTorrent for more than year (July of 2018 through August of 2019).  This continuing conduct shows not only a conscious decision to commit crimes, but an unwillingness or inability to stop himself.

**The Conditions Suggested by the Defendant Are Not Sufficient to Mitigate Against the Risk of Danger he Poses or Overcome the Presumption of Detention**

The suggested conditions proposed by the defendant (sureties, restrictions on use of the internet and home confinement) cannot address the risks that the defendant poses, especially since he committed the recent crime with technology that can easily be purchased and hidden. Disposable smartphones with internet access are relatively inexpensive, and this fact goes to the near impossibility of effectively monitoring the defendant, even if he were to be confined to a particular residence.  There is very little to stop the defendant from acquiring another device with internet access that would quickly enable him to download specialized software, search for child sexual abuse depictions, download them, use them for his own enjoyment, and share them.  The government's concern is based on experiences such as *United States v. Jack Mootz*, 1:17-cr-

00053-DAD-BAM, a case in which the defendant was released on conditions on March 26, 2017, including no internet access.  That defendant was found in violation of conditions on April 24, 2017, and remanded into custody based on his use of an internet-enabled phone.  Another similar experience took place in the Northern District of California in *United States v. Kenneth Breslin*, in which the defendant in a possession of child sexual abuse material case was ordered not to use the internet or use a possess a computer or smartphone when released in December of 2016.  NDCA case 16-CR-0515 YGR, Dkt. #4, Initial release order.  While released on bond, Breslin was first caught using a smartphone for suspicious internet activity, sanctioned, then was caught using a laptop computer and thumb drive to download additional depictions of children engaging in sexual activity.  *Id*., Dkt. #88, Transcript of sentencing hearing.

Defendant suggests that location monitoring will ensure the safety of the public.  Dkt. 15 at 9.  While ankle monitoring using GPS technology could alleviate some concerns about non-appearance or flight (unless the defendant cuts off the ankle monitoring device), there is absolutely no way for electronic monitoring to know whether the defendant had contacted a child or in any other way violated the terms of his release.  Judge Reinhart noted this problem in *Hir* when he echoed concerns by the First Circuit in how ineffective electronic monitoring can be.  It "does not prevent a defendant from committing crimes within the monitoring radius, [and] there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions, and . . . phone monitoring could be evaded by use of cellular and pay phones."  *Hir* at 1092, citing *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990).

And just as Judge Reinhart noted in *Hir* that the proposed conditions in that case would be ineffective, no conditions here could be fashioned to reasonably assure the safety of the community.  Notably, in order to be effective, the conditions depend on the defendant's "good faith compliance."  *Hir*, at 1092.   Even the most restrictive conditions can, at times, as demonstrated by some of the facts of the cases mentioned above be "easily circumvented or manipulated."  *Id*.   The danger that this defendant presents is very high, given the nature of the crime alleged in the instant Indictment, his previous violent sexual criminal conduct, his

Government's Opposition to
Defendant's Motion to Revoke Deten.

11

familiarity with computers and the BitTorrent network, the ease of obtaining digital devices that can be concealed from family members or Pretrial Services Officers, and the ability to quickly remove an ankle monitor. In this case, there is an unacceptably high risk that the defendant would not comply with even the most restrictive conditions that might be fashioned, and poses a serious danger to the community. *C.f. Hir*, at 1093.

### VI. CONCLUSION

The government respectfully submits that, under the circumstances of this case, and due to the nature and circumstances of the defendant's prior criminal conviction, the defendant has failed to rebut the presumption that no conditions can be fashioned to reasonably assure the safety of the community. After reviewing the record *de novo* and weighing the evidence, the government respectfully submits that it has established, by clear and convincing evidence, that there is no condition or combination of conditions of release that will reasonably assure the safety of the community. The defendant should remain detained.

Dated: February 18, 2020                    Respectfully submitted,

                                            McGREGOR W. SCOTT
                                            United States Attorney

                                    By:     /s/ ***Christina McCall***
                                            CHRISTINA M. McCALL
                                            Assistant U.S. Attorney

Government's Opposition to
Defendant's Motion to Revoke Deten.
12